**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**
**NO.: 7:18-CR-00032-BO-2**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **MOTION TO SUPPRESS AND** |
| v. | ) | **INCORPORATED** |
| | ) | **MEMORANDUM OF LAW** |
| DAQUAN MADRID PRIDGEN | ) | |

COMES NOW, the Defendant, Daquan Madrid Pridgen, by and through the undersigned counsel of record and moves this Honorable Court for entry of an order suppressing all evidence seized and information derived from the warrantless search of Defendant's LG cell phone, model number LG230G (phone), including, but not limited to, historical GPS location information. The basis for defendant's motion is that all evidence seized and information derived from the phone was obtained in violation of the Fourth Amendment guarantees that "peopled be secure in their person, papers and effects against unreasonable searches and seizures." In furtherance of this motion, counsel for defendant shows upon the Court the following:

**MEMORANDUM IN SUPPORT**

I.     **Statement of the Case**

On January 29, 2018 Defendant, along with three other individuals, was charged by way of criminal complaint with bank robbery in violation of 18 U.S.C. § 2113 and discharging a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c). On February 21, 2018, a Grand Jury returned a true bill of indictment against Defendant for bank robbery in violation of 18 U.S.C. § 2113, discharging a firearm during the commission of a crime

of violence in violation of 18 U.S.C. § 924(c), and the additional charge of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922.

## II.     Facts

On January 23, 2018 at approximately 3:35 p.m. two masked individuals entered the PNC Bank located at 700 North Chestnut St. in Lumberton, North Carolina. A short time later two other masked individuals entered the bank. All four of the individuals were purportedly armed. The four individuals emptied the money drawers of the teller stations located at the front of the bank. One of the individuals instructed a bank employee to open the safe. The employee informed the individual that the safe was on a 15-minute timer. The four individuals then fled from the bank and left the scene in what was described as a gray 1990's model sedan car.

Lumberton Police officers responded to the scene of the robbery and observed a gray in color Saturn that they believed matched the description given of the get-away car. When officers tried to conduct a traffic stop on the suspect vehicle, a chase ensued. During the chase, occupants of the suspect vehicle purportedly fired shots at the trailing police vehicles, striking several of them. Near the Antioch Mini Mart the suspect vehicle stopped and one of its passengers jumped from the car and fled on foot. The vehicle pursuit continued into Columbus County, North Carolina and concluded when the suspect vehicle was brought to a stop and two of the occupants fled into nearby woods. Officers believe the fourth suspect exited the suspect vehicle at some point between the Antioch Mini Mart and the car coming to a stop in Columbus County.

The suspect vehicle was identified as a four door, silver in color Saturn L200 that displayed South Carolina temporary registration with an expiration date of February 18, 2018, VIN 1G8JU52Fl l Y575437. At 11:12 pm on January 23, 2018 North Carolina SBI Special

Agent J.C. Davis began a search of the Saturn without a search warrant. Evidence recovered from the suspect vehicle during this warrantless search included a 12-gauge double barreled shotgun (serial number DP 19872), a Glock 43 9mm pistol (serial number BCUB850), a Sig Sauer 220 .45 caliber pistol (serial number 37AQ13844), spent .308 shell casings, .308 rounds, a black jacket, a black wig/fake beard, duck-tape, four black cotton/polyester gloves, two nearly empty bottles of Gatorade recovered from the front center console, several .308 and 12 gauge shell casings from inside the vehicle, four spent .308 shell casings from outside the vehicle, a North Carolina license plate located inside the vehicle's trunk (TRE-5371 ), a white bandana, a black mask, and a flip-style LG cell phone. This search appears to have concluded at 3:33 am on January 24, 2018.

On January 25, 2018 FBI Special Agent Glenn Rachelle submitted the LG flip phone seized a day and a half prior to FBI Special Agent Richard J. Novelli, Jr. requesting a CART examination be conducted on the flip phone. The CART request form submitted with the flip phone lists the request date as 01/25/2018 and notes that the request has a "routine" priority. No warrant was obtained prior to Agent Novelli retrieving the data from the LG flip phone.

Investigators reviewed the LG flip phone, including its text messages, contacts list and directory of recently called phone numbers. Investigators concluded that information on the phone suggested the phone belonged to the Defendant. During this warrantless search investigators also reviewed Historical Call Detail Records for the phone and determined that the phone pinged off of a cell tower in the vicinity of PNC Bank at a time near the robbery. Based on this search, investigators developed Defendant as a suspect in the robbery.

### III. Legal Discussion

#### a. The Cell Phone Search

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is longstanding doctrine in this country that if law enforcement conduct a search for evidence of criminal wrongdoing, a warrant is generally required. The warrant requirement acts as a safeguard to the 4th amendment by ensuring that the "reasonsableness" of a search is "drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U. S. 10, 14 (1948). In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement. See Kentucky v. King, 563 U. S. ___, ___ (2011) (slip op., at 5–6).

In *Riley v. California*, 134 S.Ct. 2473 (2014), the court dealt with one of those "specific exceptions"; a search incident to arrest. The *Riley* court concluded that, though there is a longstanding history of allowing law enforcement to search a person and his vehicle incident to a lawful arrest, that warrant exception does not extend to a search of an arrestee's phone. "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple — get a warrant." *Id* at 2495.

In reaching its decision, the *Riley* court considered its normal method of determining whether to exempt a type of search from the warrant requirement. That rule, the court concluded, established in *United States v. Robinson*, 414 U.S. 218 (1973) requiring "assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to

which it is needed for the promotion of legitimate governmental interests" worked well when dealing with physical objects, but was of little use with respect to digital evidence on cell phones. *Riley*, 2484. The government interest promoted, officer safety, is not an issue in the context of cell data, while the intrusion, considering the amount of personal information that today's cell phones can hold, is tremendous. Based on this the court refused to extend the warrantless search doctrine to cell phones seized incident to arrest.

The facts of *Riley* are slightly distinguishable from the facts currently before the court as the phone seized here was not incident to arrest. However, the starting point is the same; unless there is an exception, a warrant is required. An analysis of the facts currently before the court using the *Robinson* test yields the same results as *Riley;* "Get a warrant". *Id* at 2495.

The two-part analysis used in *Robinson* and *Riley* begins with a review of the degree to which a search will intrude on the individual's privacy. The current privacy interests is indistinguishable from that in *Riley*.

> " In 1926, Learned Hand observed (in an opinion later quoted in *Chimel*) that it is "a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him." *United States v. Kirschenblatt,* 16 F.2d 202, 203 (C.A.2). If his pockets contain a cell phone, however, that is no longer true. Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form — unless the phone is." *Id* at 2491.

Bottom line, because of the tremendous amount of personal information found on the modern cell phone a search of its contents without a warrant should only be allowed for the promotion of the most-dire of government interests.

It is on the second prong of the *Robinson* test that this court must conduct analysis different from *Riley*. Because *Riley* dealt with a search incident to arrest, the government interest

was naturally categorized as officer safety and the protection of evidence, the so called *Chimel* factors. Here, the Government would no doubt contend that the exigent circumstances present in this case excuse their failure to obtain a search warrant. Exigent circumstances have long excused warrantless searches in the eyes of our courts.

> "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape." *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 299 (1967).

Any contention that exigent circumstances justified the warrantless search of the cell phone, however, is without merit. As noted above, the phone was recovered from the Saturn between 11:12 pm on January 23, 2018 and 3:33 am on January 24. The CART request submitted to Agent Novelli is dated January 25, 2018 and the listed priority is "routine". Law enforcement officers had all of January 24th, a Wednesday, to obtain a search warrant for the phone. The exigent circumstances exception to the warrant requirement do not save the search of the cell phone seized on January 23 from suppression; nor can any other warrant exception.

### b. Cell Site Location Information (CSLI)

Discovery provided by the government indicates that law enforcement obtained Historical Call Detail Records for the cell phone[1]. Undersigned believes investigators then used those records to determine CSLI for calls made from the phone on the day of the robbery. Investigators concluded that at least one call was made that pinged off of a tower in close proximity to the PNC Bank in Lumberton.

---

[1] The Historical Call Detail Records are mentioned in the Criminal Complaint filed against Defendant but have not been provided in Discovery. Undersigned has requested that the Government obtain and provide the actual records.

Investigators did not obtain a search warrant for the call records or for the CSLI. The Supreme Court recently addressed this very issue and held:

> "Given the unique nature of cell phone location records, the fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection. Whether the Government employs its own surveillance technology as in *Jones* or leverages the technology of a wireless carrier, we hold that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI. The location information obtained from Carpenter's wireless carriers was the product of a search." *Carpenter v. United States,* 585 U.S.___(2018).

Obtaining location information from the LG Cell Phone seized in this case was a warrantless search without a valid exception.

## CONCLUSION

For the above stated reasons, all evidence obtained as a result of the unconstitutional warrantless search of the LG phone seized on January 23, 2018, including all Cell Site Location Information, should be suppressed pursuant to the Fourth Amendment. In addition, all evidence derived as a result of the aforementioned searches should be suppressed as Fruit of the Poisonous Tree. The Defendant requests a hearing and oral argument on these issues. Due to the ongoing discovery process, Defendant reserves the right to supplement this filing as more discovery is provided by the Government.

This the 17 day of July, 2018.

LUDLUM LAW FIRM, P. A.


/s/ Hayes S. Ludlum
By:    Hayes S. Ludlum
        Attorney for Defendant
        404 North Pine Street
        Warsaw N.C. 28398
        Telephone:
        (910) 293-2000

(910)-592-2266
Fax: (910)-249-4980
hludlum@ludlumlawfirm.com
N.C. State Bar No. 34077
LR 57.1 Criminal; Appointed

## CERTIFICATE OF SERVICE

I hereby certify that I this day have served a copy of this pleading upon counsel for

the Government by electronic filing.  This July 17, 2018.


LUDLUM  LAW FIRM, P. A.

/s/ Hayes S. Ludlum

By:    Hayes S. Ludlum
Attorney for Defendant
404 North Pine Street
Warsaw N.C. 28398
Telephone:
(910) 293-2000
(910)-592-2266
Fax: (910)-249-4980
hludlum@ludlumlawfirm.com
N.C. State Bar No. 34077
LR 57.1 Criminal; Appointed


TO:    **Erin Blondel**
United States Attorney's Office
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
919-856-4879
Fax: 919-456-4530